TRAVELERS INSURANCE COMPANY, Respondent, vs. PIERCE ENGINE COMPANY, Appellant.

*November 15—December 7, 1909.*

*Contracts: Construction: "Audit:" Appeal: Findings of fact: Arbitration and award: Scope: Conclusiveness: Effect on pending action: Evidence: Admissions: Arbitration agreement, when binding: Acceptance: Notice of hearings: Waiver of objection to arbitrator.*

1. The word "audit," though sometimes restricted to a mere mathematical process, generally includes investigation, weighing of evidence, and deciding whether items should or should not be included.

2. In ascertaining the scope of a submission to arbitration under an ambiguous agreement therefor, the negotiations between the parties and circumstances under which the agreement was made may be considered.

3. Where the proper construction of an ambiguous contract depends in a measure upon somewhat confused facts and upon the inferences of intention to be drawn therefrom, the conclusion of the trial court as to such construction is entitled to the weight of the ordinary finding of fact.

4. Where by an arbitration agreement the parties submit to an auditor the question of the amount due to one of them, involving matters of fact and of law, the jurisdiction of such arbitrator is as broad as that of a court, and his honest conclusion, even though erroneous, within that jurisdiction is as binding upon the parties.

5. An agreement to submit to arbitration matters involved in a pending action *ipso facto* dismisses that action.

6. A recital in an arbitration agreement that it is made in consideration of the dismissal of an action amounts to an admission of such dismissal.

7. Where by an arbitration agreement the amount due plaintiff is to be determined by plaintiff's auditor after inspecting and auditing defendant's books, the plaintiff by sending its auditor to examine the books accepts the agreement and becomes bound to do such acts as will give it full effect; and defendant cannot thereafter object that the agreement is unilateral and without consideration.

8. Where a party to an arbitration agreement was given full opportunity to be present before the arbitrator at all material times and availed himself of such opportunity, he cannot thereafter complain that the agreement failed to provide for notice of hearings and that no notice was in fact given to him or to the other party.

9. That the arbitrator was an employee of one of the parties is not a legitimate objection to the award, where both parties knew that fact when they agreed upon him as arbitrator.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Affirmed.*

Defendant having been insured by plaintiff against liability for injuries to certain classes of its employees during the year ending November 1, 1903, upon an agreement that it should pay for the insurance fifty cents on each $100 of wages paid to certain differently described and defined classes of employees during the year, shortly after that date made a statement to the plaintiff to the effect that its actual wages paid had been $27,004, upon which, after having paid $100 of premium at the commencement of the year, resulted a liability of $35.02 additional premium. Defendant failing and neglecting to pay this upon demand, suit was commenced therefor, in which, in the form of a general denial, it denied any liability. Thereafter, before trial, the parties entered into an agreement reciting pendency of this suit, and defendant's willingness to pay such sum as shall appear due upon a proper audit of its pay roll, and continuing:

"Now, therefore, in consideration of the dismissal by the plaintiff of the action aforementioned, the *Pierce Engine Company* hereby agrees:

"(1) That the *Travelers Insurance Company* may at any

time, by its regular auditor, inspect and audit the pay-roll
books of the *Pierce Engine Company* for the purpose of ascer-
taining the exact amount earned as premium during the pe-
riod in which the said policy of insurance was in force, and
that for the purpose of such audit it will grant to the said
auditor free access to all the original books and papers relative
to the said pay roll, and will give him such assistance as he
may require in making said audit.

"(2) That, when said auditor shall as aforesaid ascertain
the amount earned by said policy in excess of one hundred
($100) dollars already paid, the *Pierce Engine Company*
will pay the amount so found to be due to the *Travelers Insur-
ance Company,* together with the interest thereon at the rate
of six per cent. per annum from the 1st day of November,
1903, to date, the court costs of the said action, the expenses
of Messrs. Vilas and Karsten in Racine amounting to two and
84-100 dollars ($2.84), which said payment shall be received
in full settlement of all claims against the said *Pierce Engine
Company* by reason of said policy."

The auditor examined defendant's books throughout the
year, and received explanation thereof from defendant by its
managing officer, A. J. Pierce, together with statement of his
contentions as to certain classes of employees whose wages he
claimed ought not to be included under the terms of the appli-
cation and policy in the basis for ascertaining the premium,
and made a determination of the amount of the pay roll upon
which the premium must be computed, and of the amount of
total premium at $198.28, of which, as before stated, $100
had previously been paid. The present action is brought to
recover that amount upon the written agreement to pay the
amount found by said auditor.

The principal defense set up by the answer was that the
report of the auditor included certain employees and wage
earners who were not "covered by said policy," notably those
engaged in boat building. The application for insurance de-
scribed the business of defendant as "manufacturing of gas
and gasoline engines and launches." It provided for the pay-

ment as premium of a certain percentage of the pay roll, as above stated, and declared "the estimated pay roll includes the wages of all piece workers employed in the factories or shops, drivers and drivers' helpers and all other employees, except as follows;" no exceptions being specified.

Upon the trial it was proved that the auditor examined the books, took the statements of the defendant as to the character of the various employees and explanation of the claims of defendant as to those whose wages or salary should be omitted, duly weighed all the considerations, and made the determination before stated. The defendant then undertook to prove that certain classes of employees or wage earners were included, also to prove what claims were made with regard to them by the defendant. The court, after argument, held that the agreement was one of submission to arbitration of the general question of the amount due from the defendant to the plaintiff, and excluded such evidence and other evidence in review of the auditor's procedure and decision, and accordingly rendered judgment for the plaintiff for the amount found due by the auditor, from which judgment the defendant appeals.

*W. W. Rowlands,* for the appellant.

For the respondent the cause was submitted on a brief signed by *Charles A. Vilas,* attorney, and *Irving A. Fish,* of counsel.

DODGE, J. There is but one substantially disputed material question on this appeal, and that is whether the agreement was a submission of the question of the amount due, involving law and fact, or a mere submission to the auditor to mathematically compute the amount of the wages shown by the books to have been paid to the employees upon whose pay roll the contract of insurance required the premium to be based. The agreement may perhaps be ambiguous. The word "audit" is sometimes restricted to a mere mathematical process, but generally is extended to include the investigation,

weighing of evidence, and deciding whether items should or should not be included. *People ex rel. Ramsdale v. Orleans Co.* 16 Misc. 213, 38 N. Y. Supp. 890; *People ex rel. Hamilton v. Jefferson,* 35 App. Div. 239, 54 N. Y. Supp. 782; *People ex rel. Brown v. Board,* 52 N. Y. 224; *People ex rel. Myers v. Barnes,* 114 N. Y. 317, 20 N. E. 609, 21 N. E. 739; *Territory ex rel. Donzelmann v. Grant,* 3 Wyo. 241, 21 Pac. 693; *In re Clark,* 5 Fed. Cas. 853. Here it is obviously used in a sense to enable the auditor to ascertain the final amount which the defendant owed, which indicates the broader meaning. However, this agreement was made in the light of various surrounding circumstances, such as the suit already commenced, negotiations between the parties wherein the plaintiff's contention as to the proper construction of the application and policy had been advanced, and many other facts proper to be considered in ascertaining the meaning of the parties. From these as well the trial court reached a conclusion in favor of such broader construction. As that conclusion, in some measure at least, depends upon somewhat confused facts and upon the inferences of intention to be drawn therefrom, it is entitled to the weight of the ordinary finding of fact. *Vilas v. Bundy,* 106 Wis. 168, 81 N. W. 812; *Chicago, St. P., M. & O. R. Co. v. C., M. & St. P. R. Co.* 113 Wis. 161, 170, 87 N. W. 1085, 89 N. W. 180. We do not think that conclusion is antagonized by any necessary construction of the words of the agreement, and we do not find any such clear preponderance of evidence as would justify us in disturbing a finding of fact. It must therefore stand as the basis upon which the rights of the parties must be determined.

The scope of the submission to arbitration being as we have stated, the province and jurisdiction of the arbitrator was as broad as that of a court and his conclusion within that jurisdiction as final upon the parties. His duty was, as counsel for defendant contends, to make a proper audit; but such proper audit was merely to ascertain the facts and decide on

the rights of the parties honestly and by application of his best judgment. It was not necessarily to make a correct audit or to decide unerringly, according to the view of the court in which his determination is sought to be enforced. *Chandos v. Am. F. Ins. Co.* 84 Wis. 184, 54 N. W. 390; *Mc-Alpine v. Trustees,* 101 Wis. 468, 78 N. W. 173; *John Pritz-laff H. Co. v. Berghoefer,* 103 Wis. 359, 364, 79 N. W. 564; *Coorsen v. Ziehl,* 103 Wis. 381, 384, 79 N. W. 562; *Consolidated W. P. Co. v. Nash,* 109 Wis. 490, 85 N. W. 485; *Eau Claire v. Eau Claire W. Co.* 137 Wis. 517, 119 N. W. 555. There is no allegation in the answer and no proof offered that the arbitrator was guilty of any fraudulent or arbitrary action or fell into mistake in any other sense than that it is claimed he decided erroneously as to certain contentions urged by defendant. But such a submission to arbitration as we have determined this to be confers just that jurisdiction to decide erroneously, if honestly, and to bind the parties to such determination by force of their agreement to be so bound. There is therefore nothing shown to warrant excusing defendant from performing its plain agreement to pay the amount found due by the auditor.

Various somewhat technical contentions are presented by the appellant, most of which disappear in the light of our conclusion as to the scope of the submission. Some of them are perhaps independent of it. One of these is that the dismissal of the first action was a condition precedent to the efficacy of the arbitration agreement, and that no proof of such dismissal has been offered. This contention is somewhat inconsistent with what is said elsewhere in appellant's brief, to the effect that an agreement to submit to arbitration the matters involved in a pending action *ipso facto* dismisses that action. This rule seems to be well established and of itself defeats the contention. *Muckey v. Pierce,* 3 Wis. 307; *Jones v. Thomas,* 120 Wis. 274, 278, 97 N. W. 950. But it must also be noted that the contract itself, on its face at least, amounts to an ad-

mission of the dismissal of the action. It recites that the agreement is made in consideration of such dismissal, not of an agreement to dismiss.

Further it is argued that the arbitration agreement is unilateral and without consideration. Apart from the executed consideration of the dismissal of the pending suit, we have no doubt that the plaintiff, after having availed itself of the agreement by sending its auditor to examine defendant's books, had accepted the same and became bound to such acts on its part as would give it full effect, and that if the auditor's report had been a less sum, or even no sum at all, it would have been final upon the plaintiff. *Excelsior W. Co. v. Messinger,* 116 Wis. 549, 93 N. W. 459; *W. G. Taylor Co. v. Bannerman,* 120 Wis. 189, 192, 97 N. W. 918.

A complaint that no notice was required by the agreement or was in fact given of any hearing by the arbitrator is met by the fact that the defendant was given full opportunity to be present at all material times and availed itself of such opportunity. It cannot complain that the other party failed of notice.

The fact that the arbitrator was an employee of plaintiff is not a legitimate objection, since both parties knew the fact and had a right to waive objection thereto and accept such person as arbitrator. *Fox v. Hazelton,* 10 Pick. 275; *Strong v. Strong,* 9 Cush. 560, 573.

We find no other error assigned which seems worthy of mention or discussion, or which would justify reversal.

*By the Court.*—Judgment affirmed.